Christopher J. Cox, SBN 151650
**HOGAN LOVELLS US LLP**
4085 Campbell Ave., Suite100
Menlo Park, CA 94025
Tel: (650) 463-4000
Fax: (650) 463-4199
chris.cox@hoganlovells.com

Robert B. Wolinsky (*pro hac vice* motion pending)
**HOGAN LOVELLS US LLP**
555 Thirteenth Street NW
Washington, DC 20004
Tel: (202) 637-5600
Fax: (202) 637-5910
robert.wolinsky@hoganlovells.com

*Attorneys for Defendant*
KERRY, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASHLEY MAHAN, on behalf of herself and all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>KERRY, INC.,<br><br>        Defendant. | **Case No. 3:20-cv-03346-WHA**<br><br>**DEFENDANT KERRY, INC.'S MOTION TO DISMISS PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT UNDER FED. R. CIV. P. 12(b)(1) AND 12(b)(6) OR, IN THE ALTERNATIVE, TO STAY OR TRANSFER**<br><br>Date:   October 1, 2020<br>Time:  8:00 AM<br><br>Assigned Judge:  Hon. William H. Alsup |

1

# TABLE OF CONTENTS

2

3   INTRODUCTION ............................................................................................................ 1

4   BACKGROUND ............................................................................................................. 1

5   LEGAL STANDARD ..................................................................................................... 3

    ARGUMENT ................................................................................................................... 5

6   I.   THIS COURT LACKS SUBJECT MATTER JURISDICTION ............................ 5

7        A.   Plaintiff's claims do not meet CAFA's amount in controversy requirement ................ 5

         B.   Kerry is not a proper Defendant in this case. ........................................... 7

8   II.  EVEN IF THE COURT HAS JURISDICTION, THIS CASE ALSO SHOULD BE
9        DISMISSED, TRANSFERRED, OR STAYED UNDER THE "FIRST-TO-FILE" RULE 9

10  III. THIS CASE SHOULD BE TRANSFERRED TO THE SOUTHERN DISTRICT OF
         NEW YORK EVEN IF THE FIRST-TO-FILE RULE DOES NOT APPLY ................... 11

11  IV.  THIS CASE ALSO SHOULD BE DISMISSED BECAUSE PLAINTIFF FAILS TO
         ADEQUATELY STATE A CLAIM. ........................................................... 12

12       A.   No Reasonable Consumer believes that the word "Vanilla" on the Products' packaging
             implies that vanilla derived from vanilla beans is present in greater quantities in the
13           Products than it actually is. .......................................................... 13

         B.   The Products' packaging would not mislead a reasonable consumer into thinking that
14           the Products contain more vanilla than cinnamon or honey. ...................................... 16

15       C.   A Reasonable Consumer would not understand "Made With Natural Ingredients" to
             mean that all ingredients in the Products are natural. ................................................. 17

16       D.   Plaintiff's GC-MS does not support her allegations that the representations on the
             Products are false. ................................................................ 18

17  CONCLUSION .............................................................................................................. 20

18

19

20

21

22

23

24

25

26

27

28

Hogan Lovells US LLP
Attorneys At Law
Menlo Park

- i -

DEFENDANT KERRY, INC.'S MOTION TO DISMISS PLAINTIFF'S AMENDED CLASS
ACTION COMPLAINT - Case No. 3:20-cv-03346-WHA

1

## TABLE OF AUTHORITIES

2

**Cases**

3

*A. J. Indus., Inc. v. U.S. Dist. Court for Cent. Dist. of California,*
503 F.2d 384 (9th Cir. 1974)..................................................................................... 12

4

*Ang v. Whitewave Foods Co.,*
5
Case No. 13-cv-1953, 2013 WL 6492353 (N.D. Cal. Dec. 10, 2013)...................... 13

6

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ................................................................................................... 4

7

*Balistreri v. Pacifica Police Dep't,*
901 F.2d 696 (9th Cir. 1988)...................................................................................... 4

8

*Bell Atl. Corp. v. Twombly,*
9
550 U.S. 544 (2007) ................................................................................................... 4

10

*Ben Chang v. Biosuccess Biotech, Co.,*
No. 14-CV-00425-LHK, 2014 WL 12703706 (N.D. Cal. May 30, 2014) ........... 11, 12

11

*Brod v. Sioux Honey Ass'n, Co-op,*
927 F. Supp. 2d 811 (N.D. Cal. 2017) ...................................................................... 14

12

*Cadenasso v. Metro. Life Ins. Co.,*
13
No. 13–cv–05491–JST, 2014 WL 1510853 (N.D. Cal. Apr. 15, 2014) ............. 10, 12

14

*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.,*
637 F.3d 1047 (9th Cir. 2011)............................................................................... 5, 18

15

*Cattie v. Wal-Mart Stores, Inc.,*
504 F. Supp. 2d 939 (S.D. Cal. 2007) ................................................................ 7, 8, 9

16

*Cheslow v. Ghiradelli Chocolate Co.,*
17
No. 19-cv-07467-PJH, 2020 WL 1701840 (N.D. Cal. Apr. 8, 2020) ...................... 17

18

*Chowning v. Kohl's Dep't Stores, Inc.,*
CV 15-08673 RGK (SPx), 2016 WL 1072129 (C.D. Cal. Mar. 15, 2016)................ 6

19

*Clark v. Perfect Bar, LLC,*
No. C 18-06006 WHA, 2018 WL 7048788 (N.D. Cal. Dec. 21, 2018)................... 17

20

*Conservation Force v. Salazar,*
21
646 F.3d 1240 (9th Cir. 2011).................................................................................... 4

22

*Continental Grain Co. v. The FBL-585,*
364 U.S. 19 (1960).................................................................................................... 12

23

*Cosgrove v. Oregon Chai,*
Case No. 19 Civ. 10686 (S.D.N.Y. 2019) ......................................................... passim

24

*CytoSport, Inc. v. Vital Pharm., Inc.,*
25
894 F. Supp. 2d 1285 (E.D. Cal. Sept. 6, 2012)....................................................... 15

26

*Davis v. Hain Celestial Grp., Inc.,*
297 F. Supp. 3d 327 (E.D.N.Y. 2018) ..................................................................... 16

27

*E. & J. Gallo Winery v. EnCana Servs., Inc.,*
No. CV F 03-5412 AWI LJO, 2008 WL 2220396 (E.D. Cal. May 27, 2008)............ 8

28

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
MENLO PARK

- ii -

DEFENDANT KERRY, INC.'S MOTION TO DISMISS PLAINTIFF'S AMENDED CLASS
ACTION COMPLAINT - Case No. 3:20-cv-03346-WHA

*Ebner v. Fresh, Inc.*,
   838 F.3d 958 (9th Cir. 2016)............................................................................ 13, 14

*Friends of the Earth v. Sanderson Farms Inc.*,
   No. 17-cv-03592-RS, 2018 WL 10613016 (N.D. Cal. Sept. 11, 2018)...................... 13, 15, 18

*Hadley v. Kellogg Sales Co.*,
   243 F. Supp. 3d 1074 (N.D. Cal. 2017) ................................................................ 13

*Harris v. CVS Pharmacy, Inc.*,
   No. ED CV 13–02329–AB (AGRx), 2015 WL 4694047 (C.D. Cal. Aug. 6, 2016) .................. 4

*Hatch v. Reliance Ins. Co.*,
   758 F.2d 409 (9th Cir. 1985)............................................................................ 11

*Hoffman v. Blaski*,
   363 U.S. 335 (1960) ...................................................................................... 11

*Humphrey v. Snap Systems, Inc.*,
   No. 5:93-cv-20251, 1993 WL 13556390 (N.D. Cal. Aug. 6, 1993) ........................... 9

*Ibarra v. Manheim Invs., Inc.*,
   775 F.3d 1193 (9th Cir. 2015)........................................................................... 4

*In re NJOY, Inc. Consumer Class Action Litig.*,
   120 F.Supp.3d 1050 (C.D. Cal. 2015) ................................................................ 16

*Intersearch Worldwide, Ltd. v. Intersearch Grp., Inc.*,
   544 F. Supp. 2d 949 (N.D. Cal. 2008) ................................................................ 9

*KCC Class Action Servs. LLC v. Aetna, Inc.*,
   Case No. CV 18-1018-JFW(JEMx), 2018 WL 5094907 (C.D. Cal. Apr. 20, 2018)............... 10

*Kohn Law Grp., Inc. v. Auto Parts Mfg. Mississippi, Inc.*,
   787 F.3d 1237 (9th Cir. 2015)........................................................................... 9

*Kokkonen v. Guardian Life Ins. Co.*,
   511 U.S. 375 (1994) ...................................................................................... 4

*Marcus v. Apple Inc.*, No. C 14–03824 WHA,
   2015 WL 151489 (N.D. Cal. Jan 8, 2015) ............................................................ 5

*Marotto v. Kellogg Co.*,
   No. 18 CIV. 3545 (AKH), 2020 WL 509035 (S.D.N.Y. Jan. 31, 2020) ...................... 15

*McKinniss v. Sunny Delight Beverages Co.*,
   No. CV-0702034-RGK (JCX), 2007 WL 4766525 (C.D. Cal. Sept. 4, 2007) ................... 14

*Merit Healthcare Int'l, Inc. v. Merit Med. Sys., Inc.*,
   721 Fed. Appx. 628 (9th Cir. 2018) .................................................................... 4

*Microchip Tech., Inc. v. United Module Corp.*,
   No. CV-10-04241-LHK, 2011 WL 2669627 (N.D. Cal. July 7, 2011) .......................... 10

*Nat'l Union Fire Ins. Co. v. Payless Shoesource, Inc.*,
   No. C-11-1892 EMC, 2012 WL 3277222 (D. Idaho Aug. 9, 2012) .......................... 10

*Ogala v. Chevron Corp.*,
   No. 14-cv-173-SC, 2014 WL 2089901 (N.D. Cal. May 19, 2014)............................. 8

Hogan Lovells US
LLP
ATTORNEYS AT LAW
MENLO PARK

DEFENDANT KERRY, INC.'S MOTION TO DISMISS PLAINTIFF'S AMENDED CLASS
ACTION COMPLAINT - Case No. 3:20-cv-03346-WHA

*Orshan v. Apple Inc.*,
   No. 5:14-cv-05659-EJD, 2018 WL 1510202 (N.D. Cal. Mar. 27, 2018) ................................ 13

*Pacesetter Sys., Inc. v. Medtronic, Inc.*,
   678 F.2d 93 (9th Cir. 1982)......................................................................................................... 9

*Pantoja v. Countrywide Home Loans, Inc.*,
   640 F. Supp. 2d 1177 (N.D. Cal. 2009) ...................................................................................... 8

*Petkevicius v. NBTY, Inc.*,
   No.: 3:14-cv-02616-CAB-(RBB), 2017 WL 1113295 (S.D. Cal. Mar. 24, 2017) ..................... 5

*Red v. Kraft Foods, Inc.*,
   No. CV 10-1028-GW (AGRx), 2012 WL 5504011 (C.D. Cal. Oct. 25, 2012) ........................ 14

*Robinson v. Overseas Military Sales Corp.*,
   21 F.3d 502 (9th Cir. 2004)......................................................................................................... 4

*Robinson v. Unilever United States, Inc.*, No. CV 17-3010-DMG (AJWx),
   2019 WL 8012687 (C.D. Cal. Aug. 21, 2019) .......................................................................... 17

*Savage v. Glendale Union High School, Dist. No. 205, Maricopa County*,
   343 F.3d 1036 (9th Cir.2003)...................................................................................................... 3

*Scott v. Credico (USA) LLC*,
   No. 17-cv-02846-EMC, 2017 WL 4210994 (N.D. Cal. Sept. 22, 2017) .................................. 7

*Sebastian v. Allstate Corp.*,
   No. 13-cv-04850-YGR, 2015 WL 1927796 (N.D. Cal. Mar. 27, 2015)................................ 5, 7

*Steele v. Wegmans Food Mkts.*, --- F. Supp. 3d ---,
   2020 WL 3975461 (S.D.N.Y. July 14, 2020) ................................................................. passim

*Stewart Org., Inc. v. Ricoh Corp.*,
   487 U.S. 22 (1988).................................................................................................................... 12

*Sue Shin v. Campbell Soup Co.*,
   No. CV 17−1082−DMG (JCx), 2017 WL 3534991 (C.D. Cal. Aug. 9, 2017) ...................... 14

*Summit Tech., Inc. v. High-Line Med. Instruments Co., Inc.*,
   922 F. Supp. 299 (C.D. Cal. 1996) .......................................................................................... 15

*Supervalu Inc. v. Exec. Dev. Sys., Inc.*,
   No. CV-06-329-S-BLW, 2007 WL 129039 (D. Idaho Jan. 12, 2007)...................................... 10

*United States ex rel. Tutanes-Luster v. Broker Sols., Inc.*,
   No. 17-cv-04384-JST, 2019 WL 1024962 (N.D. Cal. Mar. 4, 2019)....................................... 11

*United States v. Bestfoods*,
   524 U.S. 51 (1998)................................................................................................................. 7, 9

*Vargas v. Harrah's Entm't*, No. 06cv0649 J (CAB),
   2006 WL 8455494 (S.D. Cal. Aug. 22, 2006) ........................................................................... 4

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003)..................................................................................................... 5

*Walker v. Progressive Casual Ins. Co.*,
   No. C03-656R, 2003 WL 21056704 (W.D. Wa. May 9, 2003) ............................................... 10

Hogan Lovells US
LLP
Attorneys At Law
Menlo Park

DEFENDANT KERRY, INC.'S MOTION TO DISMISS PLAINTIFF'S AMENDED CLASS
ACTION COMPLAINT - Case No. 3:20-cv-03346-WHA

*Ward v. Follett Corp.*,
   158 F.R.D. 645 (N.D. Cal. 1994) ..................................................................................... 9

*Werbel ex rel. v. Pepsico, Inc.*,
   No. C 09–04456 SBA, 2010 WL 2673860 (N.D.Cal. July 2, 2010) ....................................... 13

*White v. Lee*,
   227 F.3d 1214 (9th Cir.2000) ............................................................................................ 3

*whiteCryption Corp. v. Arxan Technologies, Inc.*,
   No. 15–cv–00754–WHO, 2015 WL 3799585 (N.D. Cal. June 18, 2015) ....................... 7, 8, 9

*Williby v. Hearst Corp.*,
   No. 5:15-cv-02538-EJD, 2017 WL 1210036 (N.D. Cal. Mar. 31, 2017) ............................. 8

*Winner Chevrolet, Inc. v. Universal Underwriters Ins. Co.*,
   No. CIV S-08-539 LKK/JFM, 2008 WL 2693741 (E.D. Cal. July 1, 2008) ......................... 7

*Workman v. Plum Inc.*,
   141 F. Supp. 3d 1032 (N.D. Cal. 2015) ..................................................................... 15, 17

*Yocupicio v. PAE Group, LLC*,
   795 F.3d 1057 (9th Cir. 2015) .......................................................................................... 7

**Statutes**

28 U.S.C. § 1332(d)(2) ............................................................................................................ 5

28 U.S.C. § 1404 .......................................................................................................... 1, 11, 12

28 U.S.C. § 1404(a) ............................................................................................................... 11

U.S. Const. Art. III, § 2 ............................................................................................................ 3

**Other Authorities**

FDA Regulatory Procedures Manual § 4–1–1 ......................................................................... 15

New York's General Business Law § 349 ................................................................................ 16

New York's General Business Law § 350 ................................................................................ 16

**Rules**

Fed. R. Civ. P. 9(b) .......................................................................................................... passim

Fed. R. Civ. P. 12(b)(1) ....................................................................................................... 3, 4

Fed. R. Civ. P. 12(b)(6) .......................................................................................................... 4

DEFENDANT KERRY, INC.'S MOTION TO DISMISS PLAINTIFF'S AMENDED CLASS
ACTION COMPLAINT - Case No. 3:20-cv-03346-WHA

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
MENLO PARK

**INTRODUCTION**

Starting about a year ago, counsel for Plaintiff began filing lawsuits relating to products containing or referring to vanilla.  To date, counsel has filed more than thirty such lawsuits.  One of these lawsuits was filed in the Southern District of New York in November 2019 against Oregon Chai, Inc., which is the company that actually makes and sells the products at issue in this lawsuit.  Oregon Chai's motion to dismiss Plaintiffs' second amended complaint in that lawsuit is pending.  The claims and almost all of the allegations in that lawsuit are repeated here.  The only difference here is that this lawsuit names Kerry, Inc. ("Kerry"), the parent company of Oregon Chai as the sole defendant, and this lawsuit seeks to certify a class of California consumers rather than New York consumers.

The same reasons why the New York lawsuit should be dismissed apply here.  The Court does not have jurisdiction over this dispute because the amount in controversy is just a tenth of the $5 million required by the Class Action Fairness Act and no reasonable consumer would be misled by the statements Plaintiff is challenging as the term "vanilla" refers to the flavor and not the specific source or amount of ingredients in the products.  Nor does the phrase "Made with Natural Ingredients" lead to the conclusion that all of the ingredients are natural.

In addition to these repeat arguments from the New York case, the complaint here also should be dismissed because it names the wrong defendant – Kerry rather than Oregon Chai.  If it is not dismissed on any of the foregoing bases, it should be dismissed, transferred or stayed based on the first-to-file doctrine or 28 U.S.C. § 1404.  There is no reason to have two courts consider the same claims related to the same products made by the same company on opposite sides of the country.

**BACKGROUND**

On November 18, 2019, the same counsel representing Plaintiff in this case filed a lawsuit against Oregon Chai, Inc. in the United States District Court for the Southern District of New York.  *Cosgrove v. Oregon Chai*, Case No. 19 Civ. 10686 (S.D.N.Y. 2019) (operative complaint,

Hogan Lovells US LLP
Attorneys At Law
Menlo Park

DEFENDANT KERRY, INC.'S MOTION TO DISMISS PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT - Case No. 3:20-cv-03346-WHA

the "New York Complaint," attached as Ex. 1).[1]   As indicated in its Rule 7.1 Corporate Disclosure Statement in *Cosgrove*, Oregon Chai is an indirect corporate subsidiary of Kerry.  Ex. 2.  Oregon Chai manufactures, markets, and sells chai tea products, including the two at issue in Plaintiff's Amended Class Action Complaint here (the "Products") called Vanilla Chai Tea Latte, which is sold in both boxes and tins.  *See* Plaintiff's Amended Class Action Complaint (ECF No. 14) ¶ 1 (the "Amended Complaint" or "Am. Compl").  The *Cosgrove* lawsuit seeks to represent a class of New York consumers pursuing claims based on the exact same facts as alleged in Plaintiff's complaint in this court.  For example, the same Products are at issue in both cases, *compare* Am. Compl. ¶ 1 ("Vanilla Chai Tea Latte is a powdered chai tea mix with a purported primary characterizing flavor of vanilla manufactured, sold and marketed by Kerry under the Oregon Chai brand.") *with* Ex. 1 ¶ 1 ("Oregon Chai, Inc. . . . manufactures, distributes, markets, labels and sells powdered chai tea mix with a purported primary characterizing flavor of vanilla, under the Oregon Chai brand . . ."), both cases challenge the same representations made on those Products, *compare* Am. Compl. ¶ 15 ("The front of the Product said 'Vanilla' in large letters as well as 'Vanilla and honey combine with premium black tea and chai spices' and 'Made with Natural Ingredients.'") *with* Ex. 1 ¶ 4 ("The relevant representations include 'Oregon Chai,' 'Vanilla,' 'Vanilla and honey combine with premium black tea and chai spices' and 'Made with Natural Ingredients.'") and both cases rely on the same GC-MS data as the basis for their challenge.  *Compare* Am. Compl. ¶¶ 38, 41 ("The compounds which comprise the Product's 'Natural Flavors' was determined through gas chromatography-mass spectrometry ('GC-MS') analysis.") *with* Ex. 1. ¶¶ 48, 56 ("GC-MS separates complex mixtures and quantifies aromatics, and determine what compounds are present in the greatest amount and percentage.").

The primary difference between the two lawsuits is that in the *Cosgrove* lawsuit, the claims are brought by a putative New York class against Oregon Chai, rather than a putative California class against Kerry.  *See* *Infra* II.  These changes do not impact the defects in the New York Complaint—indeed, they merely compound the problems as the Amended Complaint here

---

[1] References to "Ex." followed by a number refer to the Exhibits to the Declaration of Christopher J. Cox filed in connection with this motion.

DEFENDANT KERRY, INC.'S MOTION TO DISMISS PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT - Case No. 3:20-cv-03346-WHA

1  provides no explanation for why Plaintiff sued the wrong Defendant.

2      The Products are Oregon Chai's vanilla flavored powdered chai tea latte mixes.  One of these

3  mixes is sold in a box containing eight, one-ounce packets, and the other is sold in a 10-ounce

4  canister or tin.  *See* Declaration of Chris Rankin ("Rankin Decl.") ¶¶3, 6.[2]  Oregon Chai's total

5  revenue from sales of the Products from 2016 to 2019 delivered into California totaled $256,279

6  based on sales of 87,584 boxes and 17,672 tins of the Products.  Rankin Decl. ¶¶ 5, 8.

7      The front of the Products says "Vanilla" in large letters, as well as "Vanilla and honey

8  combine with premium black tea and chai spices" and "Made with Natural Ingredients."  Am.

9  Compl. ¶ 15.  Plaintiff alleges that, through these representations on the Products, Kerry "falsely

10  and misleadingly markets Vanilla Chai Tea Latte to consumers as having a primary characterizing

11  flavor of 'Vanilla' that comes from the vanilla plant."  Am. Compl. ¶ 3.  Plaintiff argues that

12  these representations are false because a gas chromatography-mass spectrometry ("GC-MS") test

13  it commissioned "failed to detect guaiacol, vanillic acid, acetovanillone, p-hydroxybenzoic acid,

14  aromatic compounds which provide the 'delicate, fruity sweet, spicy flavor and aroma'

15  commonly associated with vanilla," Am. Compl. ¶ 43, and detected high quantities of vanillin, as

16  well as two other compounds "most commonly obtained from cinnamon."  Am. Compl. ¶¶ 42, 44.

17  Plaintiff alleges that she "would not have purchased or paid more for" the Products had she

18  "known that what small amount of vanilla [they do] contain is not exclusively derived from

19  vanilla beans."  *Id.* ¶ 8.

20                              **LEGAL STANDARD**

21      A motion to dismiss under Rule 12(b)(1) challenges the subject matter jurisdiction of the

22  court where the action was filed.  Fed. R. Civ. P. 12(b)(1).  Federal courts are courts of limited

23  jurisdiction, which may adjudicate only actual cases or controversies.  U.S. Const. Art. III, § 2.

24  _____

25  [2] Defendants bring this motion as a Rule 12(b)(1) motion to dismiss for lack of subject matter
jurisdiction. In evaluating a 12(b)(1) motion to dismiss, the Court may properly consider facts
26  outside the Complaint because Rule 12(b)(1) attacks on jurisdiction can be either facial or factual.
*Savage v. Glendale Union High School, Dist. No. 205, Maricopa County*, 343 F.3d 1036, 1040
n.2 (9th Cir.2003) (*citing White v. Lee*, 227 F.3d 1214, 1242 (9th Cir.2000)). By presenting
27  evidence, a party converts its motion to dismiss into a factual motion, and the opposing party
must furnish evidence of jurisdiction. *Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939 (S.D.
28  Cal. 2007).

HOGAN LOVELLS US
LLP
ATTORNEYS AT LAW
MENLO PARK
- 3 -
DEFENDANT KERRY, INC.'S MOTION TO DISMISS PLAINTIFF'S AMENDED CLASS
ACTION COMPLAINT - Case No. 3:20-cv-03346-WHA

1    "Courts 'presume[ ] that a cause lies outside this limited jurisdiction,' until the party invoking

2    federal jurisdiction establishes otherwise." *Harris v. CVS Pharmacy, Inc.*, No. ED CV 13–

3    02329–AB (AGRx), 2015 WL 4694047, at *2 (C.D. Cal. Aug. 6, 2016) (quoting *Kokkonen v.*

4    *Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994)).  Thus, a complaint must allege facts showing

5    the existence of a justiciable case or controversy. There is no actual controversy, and thus no

6    subject matter jurisdiction, unless the facts alleged, "under all the circumstances, show that there

7    is a substantial controversy, between parties having adverse legal interests." *Merit Healthcare*

8    *Int'l, Inc. v. Merit Med. Sys., Inc.*, 721 Fed. Appx. 628, 629 (9th Cir. 2018) (citation omitted).

9        On a 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, "the burden of proving

10   jurisdiction is on the party asserting it." *Vargas v. Harrah's Entm't*, No. 06cv0649 J (CAB),

11   2006 WL 8455494, at *2 (S.D. Cal. Aug. 22, 2006) (quoting Robinson *v. Overseas Military Sales*

12   *Corp.*, 21 F.3d 502, 507 (9th Cir. 2004)).  Plaintiff's burden cannot be met "by mere speculation

13   and conjecture, with unreasonable assumptions." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193,

14   1197 (9th Cir. 2015).  Instead, "when the amount in controversy is contested, 'both sides submit

15   proof and the court decides, by a preponderance of the evidence, whether the amount-in-

16   controversy requirement has been satisfied.'" *Harris*, 2015 WL 4694047, at *3 (holding that

17   Plaintiff did not meet his burden to prove that the amount in controversy exceeded $5,000,000 for

18   jurisdiction to exist under CAFA) (citation omitted)).

19       A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal

20   sufficiency of a claim." *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011).

21   "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts

22   alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699

23   (9th Cir. 1988).  "When there are well-pleaded factual allegations, a court should assume their

24   veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft*

25   *v. Iqbal*, 556 U.S. 662, 679 (2009).  However, "the tenet that a court must accept as true all of the

26   allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of

27   the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

28   at 678 (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "Where a complaint pleads

Hogan Lovells US
LLP
Attorneys At Law
Menlo Park

- 4 -

DEFENDANT KERRY, INC.'S MOTION TO DISMISS PLAINTIFF'S AMENDED CLASS
ACTION COMPLAINT - Case No. 3:20-cv-03346-WHA

facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Marcus v. Apple Inc.*, No. C 14–03824 WHA, 2015 WL 151489, at *2 (N.D. Cal. Jan 8, 2015) (quoting *Iqbal*, 556 U.S. at 678) (Alsup, J.).

Finally, a complaint sounding in fraud also must meet the elevated pleading requirements of Fed. R. Civ. P. 9(b). "To satisfy Rule 9(b), a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about [the purportedly fraudulent] statement, and why it is false." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (internal quotation marks omitted). "[T]he circumstances constituting the alleged fraud [must] be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation omitted).

## ARGUMENT

### I.   THIS COURT LACKS SUBJECT MATTER JURISDICTION

#### A.  Plaintiff's claims do not meet CAFA's amount in controversy requirement.

Plaintiff filed this case in federal court pursuant to the Class Action Fairness Act ("CAFA"). "Under CAFA, federal jurisdiction extends to class actions: (1) in which there are at least 100 members; (2) the combined claims of the members exceeds $5 million; and (3) there is minimal diversity of citizenship." *Sebastian v. Allstate Corp.*, No. 13-cv-04850-YGR, 2015 WL 1927796, at *4 (N.D. Cal. Mar. 27, 2015). *See also* 28 U.S.C. § 1332(d)(2). Where a case is originally filed in federal court pursuant to CAFA, the Court must "be particularly vigilant in evaluating and questioning jurisdiction." *Petkevicius v. NBTY, Inc.*, No.: 3:14-cv-02616-CAB-(RBB), 2017 WL 1113295, at *3 n.1 (S.D. Cal. Mar. 24, 2017).

Jurisdiction does not exist here because Plaintiff does not meet CAFA's amount-in-controversy requirement. The Amended Complaint provides neither an exact figure nor a formula to calculate the monetary relief sought. Plaintiff does not even allege the price of the Products during the class period. Indeed, Plaintiff does not reference the amount in controversy

- 5 -

anywhere in the Amended Complaint, other than her conclusory allegation that "[t]he amount in controversy exceeds the sum or value of $5,000,000." Am. Compl. ¶ 10. This is not surprising, as Kerry can show with legal certainty that the amount in controversy in this case does not exceed $5 million.

The only monetary remedies available based on Plaintiff's claims are restitution under the California Unfair Competition Law ("UCL") and California False Advertising Law ("FAL"), as well as damages under the California Consumer Legal Remedies Act ("CLRA"). The maximum monetary relief available to the class under either measure would be a full refund, which is rarely appropriate in alleged false advertising cases. *See Chowning v. Kohl's Dep't Stores, Inc.*, CV 15-08673 RGK (SPx), 2016 WL 1072129, *7 (C.D. Cal. Mar. 15, 2016) ("[N]umerous district courts have held that consumers alleging mislabeling or deceptive advertising are not entitled to a full refund where the challenged product conferred some benefit notwithstanding the false advertising.").

Even if a full refund could be justified here, it is a "legal certainty" that that amount would not exceed $5 million. Kerry has gathered sales data for the Products sold between May 2016 and May 2019,[3] and delivered to an address in California. Rankin Decl. ¶¶ 3, 6. This data shows that Kerry's total revenue for that period was $256,279.00, well below the $5 million threshold for CAFA jurisdiction. Rankin Decl. ¶¶ 4,7. While that should be the end of the inquiry given that Plaintiff has not alleged the price of the products in the Amended Complaint, the result would be same considering the retail price of the Products as alleged in *Cosgrove*,[4] CAFA jurisdiction would not be met. A full refund of the retail prices of the boxes results in $428,285.76 in damages (price alleged by the plaintiffs in *Cosgrove* of $4.89 x 87,584 total boxes delivered into

---

[3] In her original complaint, Plaintiff alleged that the class period should be from May 18, 2016 until the present. ECF No. 1 at 72. In her Amended Complaint, she now alleges that the class period should be from May 9, 2014 until the present. Am. Compl. ¶ 89. It is not clear why Plaintiff made this change but, in light of the statute of limitations on her claims (four years under the UCL and three years under the FAL and CLRA), the Court should not consider any claims prior to 2016 and 2017 respectively.
[4] In *Cosgrove*, the plaintiffs alleged that the Products are sold at a price of approximately $4.89 per eight ounce box and $5.49 per ten ounce tin respectively. Ex. 1 ¶ 106.

DEFENDANT KERRY, INC.'S MOTION TO DISMISS PLAINTIFF'S AMENDED CLASS
ACTION COMPLAINT - Case No. 3:20-cv-03346-WHA

California) and a full refund for the retail price of the tins results in $97,019.28 (price alleged by the plaintiffs in *Cosgrove* of $5.49 x 17,672 retail tins delivered into California) in damages. These two values combined result in a total amount-in-controversy of $525,305.04, well below the $5 million threshold.

Because the value of Plaintiff's claims does not exceed $5 million, CAFA does not confer jurisdiction over this case. *Yocupicio v. PAE Group, LLC*, 795 F.3d 1057, 1062 (9th Cir. 2015); *Scott v. Credico (USA) LLC*, No. 17-cv-02846-EMC, 2017 WL 4210994, at *4 (N.D. Cal. Sept. 22, 2017) (CAFA amount in controversy requirement was not met where party asserting jurisdiction "[had] not demonstrated, by a preponderance of the evidence, that the amount in controversy exceeds $5 million"); *Sebastian*, 2015 WL 1927796, at *5 (CAFA amount in controversy requirement was not met where "the Court, exercising its common sense and good judgment, [could] see no basis" for plaintiff's "remarkably high [damages] figure").  As such, the Amended Complaint must be dismissed.

### B.  Kerry is not a proper Defendant in this case.

It is hornbook law that a parent company is not liable for the acts of its subsidiaries, *see whiteCryption Corp. v. Arxan Technologies, Inc.*, No. 15–cv–00754–WHO, 2015 WL 3799585, at *2 (N.D. Cal. June 18, 2015); *see also Winner Chevrolet, Inc. v. Universal Underwriters Ins. Co.*, No. CIV S-08-539 LKK/JFM, 2008 WL 2693741, *2 (E.D. Cal. July 1, 2008) (*citing United States v. Bestfoods*, 524 U.S. 51, 61 (1998)), and that the mere existence of a parent-subsidiary relationship is insufficient to state a claim against the parent company for the subsidiary's alleged actions.  *Bestfoods*, 524 U.S. at 61 ("It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation [so called because of control through ownership of another corporation's stock] is not liable for the acts of its subsidiaries."); *Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 944 (S.D. Cal. 2007) ("It is well-established that a parent-subsidiary relationship alone is an insufficient basis on which to hold a parent liable for a

DEFENDANT KERRY, INC.'S MOTION TO DISMISS PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT - Case No. 3:20-cv-03346-WHA

1   subsidiary's actions").

2       As such, allegations against a parent company do not survive a motion to dismiss merely by

3   conflating the actions of the parent and subsidiary. *See, e.g., Ogala v. Chevron Corp.*, No. 14-cv-

4   173-SC, 2014 WL 2089901, at *2-4 (N.D. Cal. May 19, 2014) (granting motion to dismiss as to

5   parent where complaint conflated the actions of parent and subsidiary); *Cattie,* 504 F. Supp. 2d at

6   944-45.   Instead, "[t]he independence of a subsidiary from the parent corporation is to be

7   presumed." *E. & J. Gallo Winery v. EnCana Servs., Inc.*, No. CV F 03-5412 AWI LJO, 2008 WL

8   2220396, *5 (E.D. Cal. May 27, 2008); *Williby v. Hearst Corp.*, No. 5:15-cv-02538-EJD, 2017

9   WL 1210036, at *4 (N.D. Cal. Mar. 31, 2017) ("'It is the general rule that a parent corporation

10  and its subsidiary will be treated as separate legal entities'" (quoting *Pantoja v. Countrywide

11  Home Loans, Inc.*, 640 F. Supp. 2d 1177, 1192 (N.D. Cal. 2009)).   A parent may only be liable

12  for the acts of its subsidiary if there is some basis to pierce the corporate veil.   *whiteCryption

13  Corp.*, 2015 WL 3799585, at *2 (listing circumstances where federal courts in California will

14  pierce the corporate veil, none of which are alleged here).

15      In *Cattie*, the plaintiff filed a putative class action against Walmart Stores and its subsidiary,

16  Walmart.com.    The complaint conflated both defendants throughout, referring to them

17  collectively as "Walmart" or "the Company," and made the same allegations as to both.  *Cattie,*

18  504 F.Supp.2d at at 944.  Despite the identical allegations, the court found that plaintiff failed to

19  state a claim against the parent, Walmart Stores, because Walmart.com was solely responsible for

20  the alleged misrepresentation made to plaintiff for her online purchase.  *Id.*

21      The same logic applies here.  Plaintiff's counsel sued Oregon Chai (but not Kerry) in the

22  Southern District of New York.  *See Cosgrove*, Case No. 19 Civ. 10686.  It is not clear why they

23  sue Kerry (but not Oregon Chai) now for identical theories.  Plaintiff conflates the actions of

24  Kerry and Oregon Chai throughout her Amended Complaint, but does not allege any basis for

25  piercing the corporate veil.  Her only remotely pertinent allegation is that Oregon Chai is Kerry's

26  "brand."  *See* Am. Compl. ¶ 1 ("Vanilla Chai Tea Latte is a powdered chai tea mix with a

27  purported primary characterizing flavor of vanilla manufactured, sold and marketed by Kerry

28  <u>under the Oregon Chai brand</u>") (emphasis added).  But that allegation does not come close to a

1   basis for piercing the corporate veil. *See whiteCryption Corp.*, 2015 WL 3799585, at *2;

2   *Bestfoods*, 524 U.S. at 61. Because there is no reason to pierce the corporate veil, Plaintiff lacks

3   standing to sue Kerry for Oregon Chai's actions. *See Cattie*, 504 F. Supp. 2d at 945.

4   **II.   EVEN IF THE COURT HAS JURISDICTION, THIS CASE ALSO SHOULD BE
    DISMISSED, TRANSFERRED, OR STAYED UNDER THE "FIRST-TO-FILE"**

5   **RULE**

6      As a separate and independent basis this action also should be dismissed, or in the alternative

7   stayed or transferred, because of a nearly identical action pending in the Southern District of New

8   York. *See Cosgrove,* Case No. 19 Civ. 10686*.*

9      The Ninth Circuit recognizes a "doctrine of federal comity" which permits a district court to

10  decline jurisdiction over a case when a complaint involving similar parties and issues has

11  "already been filed in another district." *See Pacesetter Sys., Inc. v. Medtronic, Inc.*, 678 F.2d 93,

12  94-95 (9th Cir. 1982) (upholding dismissal of complaint involving the same parties and issues as

13  case in another district). This doctrine, the "first-to-file" rule, "serves the purpose of promoting

14  efficiency well and should not be disregarded lightly." *Id.* (citation omitted). It is designed to

15  address increasing calendar congestion in the federal courts and "avoid concurrent litigation in

16  multiple forums." *Humphrey v. Snap Systems, Inc.*, No. 5:93-cv-20251, 1993 WL 13556390, at

17  *2 (N.D. Cal. Aug. 6, 1993). The first-to-file rule allows the court presiding over the

18  subsequently filed action to transfer, stay, or dismiss the proceeding to allow the first-filed court

19  to preside over and try the case. *See Pacesetter*, 678 F.2d at 95-96 (affirming dismissal); *Ward v.*

20  *Follett Corp.*, 158 F.R.D. 645 (N.D. Cal. 1994) (dismissing second-filed action).

21     To apply this rule, courts look at three factors: (1) the chronology of the lawsuits; (2) the

22  similarity of the parties; and (3) the similarity of the issues. *Kohn Law Grp., Inc. v. Auto Parts*

23  *Mfg. Mississippi, Inc*., 787 F.3d 1237, 1240 (9th Cir. 2015). The Ninth Circuit does not require

24  the actions at issue to be identical, only that they involve substantially similar parties and claims

25  to a previously filed action. *See id.* at 1240; *see also Intersearch Worldwide, Ltd. v. Intersearch*

26  *Grp., Inc*., 544 F. Supp. 2d 949, 958-59 (N.D. Cal. 2008).

27     Each of the first-to-file factors is present here. First, there can be no dispute that the Southern

28  District of New York case was filed first by 6 months. *See Cosgrove*, Case No. 19 Civ. 10686

DEFENDANT KERRY, INC.'S MOTION TO DISMISS PLAINTIFF'S AMENDED CLASS
ACTION COMPLAINT - Case No. 3:20-cv-03346-WHA

1    (filed Nov. 18, 2019).

2        Second, it is well-settled that a wholly owned subsidiary is substantially similar to its parent

3    company for purposes of the first-to-file rule.  *See Microchip Tech., Inc. v. United Module Corp.*,

4    No. CV-10-04241-LHK, 2011 WL 2669627 (N.D. Cal. July 7, 2011); *see also KCC Class Action*

5    *Servs. LLC v. Aetna, Inc.*, Case No. CV 18-1018-JFW(JEMx), 2018 WL 5094907, at *4 (C.D.

6    Cal. Apr. 20, 2018) (party's "affiliate" is substantially similar).  But for location, the putative

7    classes are the same in both cases as well, *compare* Am. Compl. at ¶ 89 ("All persons residing in

8    California who have purchased Vanilla Chai Tea Latte for their own use (which includes feeding

9    their families), and not for resale, since May 9, 2014" *with* Ex. 1 at ¶ 124 ("all purchasers of the

10   Vanilla Chai 8 OZ boxes (1 OZ packets) and 10 OZ tins in New York during the applicable

11   statutes of limitations").  This geographic distinction, even though it means the proposed classes

12   are composed of different people, does not defeat similarity under the first-to-file rule.  *See*

13   *Cadenasso v. Metro. Life Ins. Co.*, No. 13–cv–05491–JST, 2014 WL 1510853 (N.D. Cal. Apr. 15,

14   2014) (holding that the first-to-file rule applied even where there is no overlap in members

15   between putative classes).

16       Finally, the issues in both cases are similar because both actions arise out the same alleged

17   misrepresentations and rely on the same test data.  Therefore the "'key dispute' in each action is

18   the same." *Nat'l Union Fire Ins. Co. v. Payless Shoesource, Inc.*, No. C-11-1892 EMC, 2012 WL

19   3277222, at *3 (D. Idaho Aug. 9, 2012); *see also Supervalu Inc. v. Exec. Dev. Sys., Inc.*, No. CV-

20   06-329-S-BLW, 2007 WL 129039 (D. Idaho Jan. 12, 2007) ("[i]n determining whether the cases

21   involve the same issue, 'it is enough that the overall content of each suit is not very capable of

22   independent development, and will be likely to overlap to a substantial degree.'"); *Walker v.*

23   *Progressive Casual Ins. Co.*, No. C03-656R, 2003 WL 21056704, at *3 (W.D. Wa. May 9, 2003)

24   (Fair Labor Standards Act and its state-law analogue are "substantially similar").  As such, the

25   first-to-file rule applies here and this case should be dismissed, stayed, or transferred to the

26   Southern District of New York.

27

28

DEFENDANT KERRY, INC.'S MOTION TO DISMISS PLAINTIFF'S AMENDED CLASS
ACTION COMPLAINT - Case No. 3:20-cv-03346-WHA

### III.   THIS CASE SHOULD BE TRANSFERRED TO THE SOUTHERN DISTRICT OF NEW YORK EVEN IF THE FIRST-TO-FILE RULE DOES NOT APPLY

Even absent application of the first-to-file rule, this case should be transferred to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1404(a) because venue is proper in that district and an earlier filed, and substantially similar litigation is currently pending there.   That statute provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."   The purpose of § 1404(a) "is to prevent the waste of time, energy and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense[.]"   *Ben Chang v. Biosuccess Biotech, Co.*, No. 14-CV-00425-LHK, 2014 WL 12703706, at *2 (N.D. Cal. May 30, 2014) (internal quotation marks omitted).

When determining whether a transfer is proper, the court performs a two-step analysis. First, the court must consider the threshold question of whether the case might have been brought in the district to which the moving party seeks to transfer.   *See Hoffman v. Blaski*, 363 U.S. 335, 344 (1960); *see also Hatch v. Reliance Ins. Co.*, 758 F.2d 409, 414 (9th Cir. 1985) ("In determining whether an action 'might have been brought' in a district, the court looks to whether the action initially could have been commenced in that district." (internal citations omitted)).   "A district court is one in which an action could have been brought originally if (1) it has subject matter jurisdiction; (2) defendants would have been subject to personal jurisdiction; and (3) venue would have been proper.*"   United States ex rel. Tutanes-Luster v. Broker Sols., Inc*., No. 17-cv-04384-JST, 2019 WL 1024962, at *2 (N.D. Cal. Mar. 4, 2019).   These factors are all met here.

As noted above, no federal court has subject matter to hear this case as it does not meet CAFA's amount-in-controversy requirement.   *See* Supra I.A. However, if that problem were somehow overcome, CAFA would confer subject matter jurisdiction in any federal district.   *See Tutanes-Luster*, 2019 WL 1024962 at *3.   As to the second and third factors, if the Court determines that Kerry is a proper defendant then the federal court in New York would have personal jurisdiction and venue would be proper as Oregon Chai "conducts and transacts

1  business, contracts to supply and supplies goods within New York." Ex. 1 at ¶ 113. These are

2  the same grounds for personal jurisdiction and venue as in the *Cosgrove* case, which Oregon Chai

3  did not contest.

4      Second, the Court must make an "individualized, case-by-case consideration" as to whether

5  venue in the transferee district would be more convenient and fair to the parties. *Stewart Org.,*

6  *Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen*, 376 U.S. at 622). This factor

7  also weighs in favor of transfer, as transferring this case to the Southern District of New York

8  would allow it to be consolidated with the *Cosgrove* case. *A. J. Indus., Inc. v. U.S. Dist. Court for*

9  *Cent. Dist. of California*, 503 F.2d 384, 389 (9th Cir. 1974) ("[t]he feasibility of consolidation is a

10 significant factor in a transfer decision, although even the pendency of an action in another

11 district is important because of the positive effects it might have in possible consolidation of

12 discovery and convenience to witnesses and parties." (citing *Van Dusen*, 376 U.S. at 612)). Even

13 if the matters were not consolidated, the convenience of conducting discovery and trying two

14 substantially similar lawsuits in the same jurisdiction weighs heavily in favor of transfer. *See Ben*

15 *Chang*, 2014 WL 12703706, at *3 (transfer to district where substantiality similar actions were

16 pending was warranted in light of, *inter alia*, "substantial overlap between the subject matters of

17 the [transferee court] actions and the instant case," as well as the fact that "discovery in the

18 instant case will likely duplicate substantial discovery already produced in the [transferee court]

19 actions."); *Cadenasso*, 2014 WL 1510853, at *7 ("[B]ecause *C–Mart* and this action involve very

20 similar questions of law and fact, the resolution of which will involve much of the same evidence

21 and testimony, requiring this Court to start this litigation anew would lead to the 'wastefulness of

22 time, energy and money that § 1404(a) was designed to prevent.'" (quoting *Continental Grain*

23 *Co. v. The FBL-585*, 364 U.S. 19, 26 (1960)). As such, transfer is appropriate here.

24 **IV.  THIS CASE ALSO SHOULD BE DISMISSED BECAUSE PLAINTIFF FAILS**
   **TO ADEQUATELY STATE A CLAIM.**

25     Claims of alleged false advertising under the UCL, FAL, and CLRA are subject to the

26 heightened pleading requirements of Rule 9(b), as well as the "reasonable consumer" standard,

27 under which the plaintiff must show that the advertising at issue is likely to deceive the public.

28

DEFENDANT KERRY, INC.'S MOTION TO DISMISS PLAINTIFF'S AMENDED CLASS
ACTION COMPLAINT - Case No. 3:20-cv-03346-WHA

*Ang v. Whitewave Foods Co.*, Case No. 13-cv-1953, 2013 WL 6492353 (N.D. Cal. Dec. 10, 2013) (granting motion to dismiss claims under the FAL, CLRA, and all three prongs of the UCL).[5] Meeting this standard requires "more than a mere possibility that [defendant's advertisement] 'might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner.'"  *Friends of the Earth v. Sanderson Farms Inc.*, No. 17-cv-03592-RS, 2018 WL 10613016, at *4 (N.D. Cal. Sept. 11, 2018) (quoting *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016)).  Rather, Plaintiff must show a probability "that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled."  *Id.*  A court may determine as a matter of law that an allegedly misleading advertisement would not have misled a reasonable consumer.  *Ang*, 2013 WL 6492353, at *4 (dismissing claims that reasonable consumer would think "soy milk" is made with dairy, rather than plant products); *Werbel ex rel. v. Pepsico, Inc.*, No. C 09–04456 SBA, 2010 WL 2673860, at *3 (N.D.Cal. July 2, 2010) (dismissing claims that reasonable consumer would think "Cap'n Crunch's Crunch Berry" cereal is derived from a real fruit).  The allegations in the Amended Complaint do not state a claim for misleading a reasonable consumer.

### A.   No Reasonable Consumer believes that the word "Vanilla" on the Products' packaging implies that vanilla derived from vanilla beans is present in greater quantities in the Products than it actually is.

Plaintiff admits that the Products contain at least "a small amount of vanilla"  *See* Am. Compl. ¶ 58 ("The Product's relatively high level of vanillin . . . is consistent with industry practice where non-vanilla flavorings, such as vanillin and maltol, are added to enhance the flavor of a small amount of vanilla").  Nonetheless, Plaintiff argues that certain representations on the

---

[5] The three prongs of the UCL are distinct causes of action, and courts have applied a variety of tests to determine whether dismissal is appropriate under those prongs. However, where all of a plaintiff's claims "stem from one basic claim grounded in fraud," claims under all three prongs are subject to the heightened pleading requirements of Rule 9(b). *Orshan v. Apple Inc.*, No. 5:14-cv-05659-EJD, 2018 WL 1510202, at *5 (N.D. Cal. Mar. 27, 2018); *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1094 (N.D. Cal. 2017) (holding that where Plaintiff has alleged a "'unified course of fraudulent conduct,' Rule 9(b)'s particularity requirement applies to the unlawful and unfair prong of the UCL in addition to the . . . fraudulent prong."). Likewise, courts in alleged false advertising cases have found that the reasonable consumer test may govern the outcome under all three prongs. *See id.* at 1089-1092, 1099, 1105 (failure to meet reasonable consumer test under fraudulent and unlawful prongs warranted dismissal under all three prongs).

DEFENDANT KERRY, INC.'S MOTION TO DISMISS PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT - Case No. 3:20-cv-03346-WHA

1   Products' packaging suggest there should be some unspecified amount *more* vanilla derived from

2   vanilla beans.  There is no such benchmark for "Vanilla" and no reasonable consumer would

3   think that there is.  Despite Plaintiff's claims, a product is not "false and deceptive merely

4   because [it] may be 'unreasonably misunderstood by an insignificant and unrepresentative

5   segment of the class of persons . . .' that may purchase the product."  *Ebner*, 838 F.3d at 966

6   (citation omitted); *see also Sue Shin v. Campbell Soup Co.*, No. CV 17–1082–DMG (JCx), 2017

7   WL 3534991, at *3 (C.D. Cal. Aug. 9, 2017) ("[Plaintiff] must allege 'more than a mere

8   possibility that the advertisement might conceivably be misunderstood by some few consumers

9   viewing it in an unreasonable manner.'" (quoting *Brod v. Sioux Honey Ass'n, Co-op*, 927 F. Supp.

10  2d 811, 828 (N.D. Cal. 2017)).

11      First, a reasonable consumer would understand that the word "Vanilla" on the Products'

12  packaging is an indicator of the Product's flavor, intended to convey to the consumer that the

13  Products have a vanilla flavor, and to distinguish the Products from the similar Oregon Chai

14  products which do not include a vanilla flavor.  A reasonable consumer would not think that the

15  word "Vanilla" is an assertion by Defendants as to the amount or quality of the vanilla contained

16  within the Products.  *See Steele v. Wegmans Food Mkts.*, --- F. Supp. 3d ---, 2020 WL 3975461,

17  at *2 (S.D.N.Y. July 14, 2020) ("The buyer's first desire is for ice cream, and when he is in the

18  frozen food area he must select, from many choices . . . . Thus the large-type 'Vanilla' is of

19  immediate use. Of course he is not looking for a bowl of vanilla.").

20      Second, no reasonable consumer would think that the word "Vanilla" on the front of the

21  packaging, followed by the phrase "[v]anilla and honey combine with premium black tea and chai

22  spices," suggests *anything* about the quantity of vanilla bean in a product.  *See Red v. Kraft*

23  *Foods, Inc.*, No. CV 10-1028-GW (AGRx), 2012 WL 5504011, at *3 (C.D. Cal. Oct. 25, 2012)

24  (finding statement that crackers were "made with real vegetables" would not lead consumer to

25  think crackers contained a significant amount of vegetables); *McKinniss v. Sunny Delight*

26  *Beverages Co.*, No. CV-0702034-RGK (JCX), 2007 WL 4766525, at *4 (C.D. Cal. Sept. 4, 2007)

27  (picture of fruit on juice label was not representation product contained a particular amount of

28  fruit).  Instead, the reasonable consumer would understand that the Products contain vanilla,

Hogan Lovells US
LLP
Attorneys At Law
Menlo Park

- 14 -

DEFENDANT KERRY, INC.'S MOTION TO DISMISS PLAINTIFF'S AMENDED CLASS
ACTION COMPLAINT - Case No. 3:20-cv-03346-WHA

honey, premium black tea, and chai spices. This is true, and Plaintiff does not allege that it is not. *See Workman v. Plum Inc.*, 141 F. Supp. 3d 1032, 1035 (N.D. Cal. 2015) (reasonable consumer would not be deceived where "[p]laintiff concedes that the labels contain no affirmative misrepresentations and that all of the items pictured are actually present in the product.") (Alsup, J.).

Third, no reasonable consumer would assume that the term "vanilla" meant that no other ingredients were used in connection with the vanilla flavor. Indeed, Plaintiff's sole basis for claims a customer would find this misleading are letters the FDA sent to other manufacturers. *See* Am. Compl. ¶¶ 19-25. But Plaintiff does not mention that FDA letters only are "informal and advisory." FDA Regulatory Procedures Manual § 4–1–1; *CytoSport, Inc. v. Vital Pharm., Inc.*, 894 F. Supp. 2d 1285, 1293–94 (E.D. Cal. Sept. 6, 2012) ("FDA warning letters are informal and advisory, and do not amount to an FDA action." (citing *Summit Tech., Inc. v. High-Line Med. Instruments Co., Inc.*, 922 F. Supp. 299, 306 (C.D. Cal. 1996)). These letters were not binding on their recipients when they were sent more than a decade ago, let alone on an entirely different party today.

Finally, no reasonable consumer would read the word "Vanilla" to mean the Products are flavored only with vanilla derived from vanilla beans. *See Friends of the Earth*, 2018 WL 10613016, at *3 (reasonable consumer would not interpret the word "natural" to describe chicken raised without antibiotics, rather than raised with antibiotics and subsequently cleared of it prior to sale); *Marotto v. Kellogg Co.*, No. 18 CIV. 3545 (AKH), 2020 WL 509035, at *3 (S.D.N.Y. Jan. 31, 2020) (rejecting "unsupported assumption" that picture of vinegar bottle on Pringles means that consumers would infer only vinegar was used to flavor chips).

A recent case brought by some of the same counsel representing the Plaintiff in this case is instructive to confirming that Plaintiffs' allegations do not meet the "reasonable consumer" standard. *See Steele*, 2020 WL 3975461, at *2-3. In *Steele*, the Court dismissed a suit making nearly identical allegations regarding the labeling of vanilla cream sold at the grocery store Wegmans. As in this case, the plaintiffs in *Steele* conceded that Wegmans' ice cream both tasted like vanilla, and contained at least some real vanilla. *Id.* at *1. Nonetheless, plaintiffs in that case

argued that the ice cream's labeling was misleading because too much of that vanilla flavor derived from sources other than vanilla bean.  *Id.* at *1.  The Court, applying the reasonable consumer standard,[6] rejected this argument:

> The plaintiffs assume that buyers take it for granted that natural vanilla flavor is wholly or largely derived from vanilla beans, and argue that if the predominant component of the flavoring is not from beans or vanilla extract, the customer is misled. . . . The Wegmans container does not mention vanilla beans, or bean extract, and even if vanilla or bean extract is not the predominant factor, if the sources of the flavor are natural, not artificial, it is hard to see where there is deception. What is misrepresented? The ice cream is vanilla flavored. The sources of the flavor are natural, not artificial.

*Id.* at *2.  So too here.  As in *Steele*, Plaintiffs here do not allege that the Products' packaging mentions vanilla beans or bean extract.  As in *Steele*, there is no dispute that the Products contain at least some vanilla, that they taste like vanilla, and that at least some of that vanilla derives from natural sources.  As such, there is no deception.

## B. The Products' packaging would not mislead a reasonable consumer into thinking that the Products contain more vanilla than cinnamon or honey.

Plaintiff alleges that the word "Vanilla" in large type, followed by the phrase "Vanilla and honey combine with premium black tea and chai spices," suggests that the Products contain more vanilla than honey, cinnamon, or spices.  Am. Compl. ¶¶ 30-31.  Plaintiff is grasping at straws. No reasonable consumer would understand the descriptive language cited by Plaintiffs to be a list of the ingredients in the product from greatest to least quantity.  *See Davis v. Hain Celestial Grp., Inc.*, 297 F. Supp. 3d 327, 337 (E.D.N.Y. 2018) ("A reasonable consumer acting reasonably under the circumstances would not understand the front label to be listing the ingredients from most to least predominant.").  Instead, the descriptive language pointed to by Plaintiffs merely communicates to the buyer how she can expect the product to taste.  The use of the word "vanilla" communicates to the customer that the product they are buying is the vanilla-flavored Oregon Chai tea products, rather than some other flavor.

---

[6] The plaintiffs in *Steele* brought claims under New York's General Business Law §§ 349 and 350. *Id.* at *2.  Courts treat the reasonable consumer standard under these statutes the same as under the UCL, FAL, and CLRA. *See In re NJOY, Inc. Consumer Class Action Litig.*, 120 F.Supp.3d 1050, 1107 n.197 (C.D. Cal. 2015).

DEFENDANT KERRY, INC.'S MOTION TO DISMISS PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT - Case No. 3:20-cv-03346-WHA

Not only that, but no reasonable consumer assumes that food manufacturers describe the quantity of ingredients on the *front panel* of a product, rather than the back.  In fact, "any potential ambiguity could be resolved by the back panel of the products, which listed all ingredients in order of predominance, as required by the FDA." *Workman*, 141 F. Supp. 3d at 1035; *see also Clark v. Perfect Bar, LLC*, No. C 18-06006 WHA, 2018 WL 7048788, at *1 (N.D. Cal. Dec. 21, 2018) (holding that no reasonable consumer could be deceived concerning the product's sugar content when the product's label plainly disclosed the amount of sugar in the product) (Alsup, J.); *Cheslow v. Ghiradelli Chocolate Co.*, No. 19-cv-07467-PJH, 2020 WL 1701840, at *7 (N.D. Cal. Apr. 8, 2020) ("District courts also recognize that where the actual ingredients are disclosed, a plaintiff may not ignore the ingredient list").  For example, in the case of honey, the back panel of the Products reveals that dried honey is the fourth most prevalent ingredient.  Am. Compl. ¶ 33.  As such, any confusion as to the honey content of the Products, relative to the content of other ingredients, could be quickly dispelled with a reference to the back of the Products.

### C.  A Reasonable Consumer would not understand "Made With Natural Ingredients" to mean that <u>all</u> ingredients in the Products are natural.

Plaintiff claims that the statement "Made with Natural Ingredients" "is false, deceptive and unlawful because reasonable consumers receive the impression that all of [the Product's] ingredients are 'natural,'" Am. Compl ¶ 51, which they cannot be in light of the results of Plaintiff's GC-MS. *Id.* ¶¶ 53-55, 66.  This argument fails because no reasonable consumer would think that the phrase "Made with Natural Ingredients" conveys that a product is composed exclusively of natural ingredients, or that it contains no artificial or synthetic ingredients.  The meaning of the limiting phrase "made with" clearly signals the possibility that only *some* of the ingredients in the product are natural.  *Robinson v. Unilever United States, Inc.*, No. CV 17-3010-DMG (AJWx), 2019 WL 8012687, at *2 (C.D. Cal. Aug. 21, 2019) (holding that the phrases "Made with 100% Natural Moisturizers," "Made with 100% Natural Exfoliant," and "Made with 100% Natural Extracts" meant that "such natural ingredients are merely *contained* inside.") (emphasis in original).  This distinction is obvious to the reasonable consumer.  *Id.* ("No degree

1    of sophistication is required to understand that the words 'Made with' refer to only a subset of the

2    ingredients of the product. Even a consumer with only a rudimentary understanding of the

3    English language would know that this text is 'synonymous with nonexhaustive words like

4    including and containing.'") (some internal quotation marks omitted).

### D. Plaintiff's GC-MS does not support her allegations that the representations on the Products are false.

7        Even if the reasonable consumer shared Plaintiff's supposed understanding of the

8    representations on the Products, Plaintiff still must allege facts to state a claim that those

9    representations are false. *See Friends of the Earth*, 2018 WL 10613016 at *2 (noting that a

10   plaintiff must allege adequate "facts that identify what is false or misleading about [Defendant's]

11   statements and why they are false." (*citing Cafasso,* 637 F.3d at 1055)).  It is not sufficient for

12   Plaintiff to allege facts showing that Defendant's representations *might* be false; the falsity must

13   be unambiguous on the face of the complaint to satisfy Rule 9(b).  *Friends of the Earth*, 2018 WL

14   10613016 at *2 (noting that such ambiguous allegations fail Rule 9(b)'s "requirement that a party

15   'state with particularity the circumstances constituting fraud[.]'") (internal citation omitted).

16       In *Steele*, as here, Plaintiff's allegations as to vanilla content of the products at issue were

17   based solely on her GC-MS testing, which she claims tests the chemical makeup of the Products

18   through "the careful extraction of the over 200 flavor compounds in vanilla along with other

19   compounds associated with spices, including cinnamon."  Am. Compl. ¶ 39.  According to

20   Plaintiff, these results show that consumers are deceived "because the Product[s] contain[] more

21   cinnamon than vanilla," and the "vanilla flavor is due to some vanilla and other non-vanilla

22   flavors which enhance, resemble and simulate the flavor of vanilla beans." *Id.* at ¶¶ 46, 59.  But

23   these test results that Plaintiffs rely on so heavily are inconclusive on the key issues in dispute,

24   and therefore do not provide sufficient allegations to state a claim.  The *Steele* court addressed the

25   same type of testing commissioned by the same people and held that it was "inapplicable" to

26   support claims as to the source of the vanilla flavoring of Wegmans' ice cream.  2020 WL

27   3975461, at *3.  The court explained that:

28       The fact that the analysis disclosed only the vanillin may simply show that the test

1
2
3

was not sensitive enough to detect the markers with smaller profiles in the bean. The test may just confirm that the vanilla flavor derives solely from vanilla extract. That is left to speculation. What is needed is to test, not for the universe of the ice cream's contents, but specifically for the presence of the particular chemical markers.

4

*Id.*

5

In this case, Plaintiff alleges that her testing did not detect four specific "aromatic compounds

6

which provide the 'delicate, fruity sweet, spicy flavor and aroma' commonly associated with

7

vanilla." Am. Compl. ¶ 43.  In addition, the GC-MS detected "an abnormal excess of vanillin"

8

and "[h]igh levels of eugenol and cinnamic aldehyde," which are "most commonly obtained from

9

cinnamon." *Id.* at ¶¶ 42, 44-45.  As in *Steele*, Plaintiff does not explain how these results of her

10

GC-MS show "unambiguously" that Defendants' representations about the vanilla content of the

11

products are untrue or misleading.  They do not.

12

For example, Plaintiff alleges a failure to detect the presence of the four "aromatic

13

compounds," but does not allege the proportion of those compounds one would expect to find in a

14

product with a sufficient amount of vanilla derived from vanilla beans.  In fact, as in *Steele*,

15

Plaintiff fails to even allege that the GC-MS is sensitive enough to detect those compounds if they

16

*are* present.  Not only that, but Plaintiff has failed to allege whether any of the other "over 200

17

flavor compounds in vanilla" *are* present, or whether their presence is relevant.  Instead, Plaintiff

18

focuses only on 4 out of 200 compounds which allegedly were not detected, and 1 out of 200

19

which allegedly was detected in too great a quantity.  The other 195 are not addressed.

20

Thus, Plaintiff's allegations based on the GC-MS testing are insufficient to state a claim that

21

that the challenged representations were false or misleading.  Even accepting her allegations as

22

true, the meaning of Plaintiff's GC-MS data shows, at best, that Kerry's representations *might* be

23

false or misleading.  This is not sufficient to meet the elevated standards of Rule 9(b) and, as in

24

*Steele*, this case should be dismissed.

25

///

26

///

27

///

28

Hogan Lovells US
LLP
Attorneys At Law
Menlo Park

## CONCLUSION

For the foregoing reasons, the Court should enter an Order granting this Motion to Dismiss and dismissing Plaintiff's Amended Class Action Complaint with prejudice.  Alternatively, the Court should stay this case or transfer it to the United States District Court for the Southern District of New York.

Dated:  August 21, 2020                                Respectfully submitted,

                                                       **HOGAN LOVELLS US LLP**

                                            By: _____

                                                 Christopher J. Cox, SBN 151650
                                                 **HOGAN LOVELLS US LLP**
                                                 4085 Campbell Ave., Suite100
                                                 Menlo Park, CA 94025
                                                 Tel: (650) 463-4000
                                                 Fax: (650) 463-4199
                                                 chris.cox@hoganlovells.com

                                                 Robert B. Wolinsky (*pro hac vice* motion pending)
                                                 **HOGAN LOVELLS US LLP**
                                                 555 Thirteenth Street NW
                                                 Washington, DC 20004
                                                 T. (202) 637-5600
                                                 F. (202) 637-5910
                                                 robert.wolinsky@hoganlovells.com

                                                 *Attorneys for Defendant*
                                                 KERRY, INC.

DEFENDANT KERRY, INC.'S MOTION TO DISMISS PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT - Case No. 3:20-cv-03346-WHA